**Michael A. HOUSE, M.D. and Michael A. House, M.D., P.A., Appellants**

v.

**Karen JONES and Ryan Jones, Appellees.**

**No. 05–08–00607–CV.**

Court of Appeals of Texas, Dallas.

Jan. 22, 2009.

already addressed the arguments, we need not do so again here. *See* Tex.R.App. P. 47.1.

Jeffrey F. Wood, James J. McGoldrick, Jones, carr, McGoldrick, L.L.P., Dallas, TX, for Appellant.

Darrell L. Keith, Keith Law Firm, P.C., Fort Worth, TX, for Appellee.

Before Justices MORRIS, FRANCIS, and MURPHY.

## OPINION

Opinion by Justice MURPHY.

Michael A. House, M.D. and Michael A. House, M.D., P.A. timely filed this interlocutory appeal pursuant to section 51.014(a)(9) of the Texas Civil Practices and Remedies Code. In a single issue, they contend the trial court abused its discretion in denying their motion to dismiss health care liability claims. We affirm.

### Background

On January 31, 2007, Karen Jones and her adult son filed this health care liability suit against Dr. House, his professional association, and six other health care providers. Jones claims Dr. House, an orthopedic surgeon, committed medical negligence in the care and treatment of her shoulder, and asserts vicarious liability against House PA.

Jones timely served Dr. House with the report and curriculum vitae of Mary Milam, M.D. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon Supp.2008). Dr. House and his professional association filed objections and a motion to dismiss pursuant to section 74.351(b). *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b). House contends Dr. Milam, a medical oncologist, is not qualified to offer opinions on the standard of care and alleged breach applicable to Dr. House, an orthopedic surgeon. House also argues Dr. Milam's report is deficient because it fails to set forth the specific standard of care and alleged breach applicable to House, is based on speculative and contingent facts, and fails to address the causal relationship between the alleged failure and the injury, harm, or damages claimed.

The trial court overruled the motion to dismiss, without reaching Jones's request under section 74.351(c) for alternative relief of a thirty-day extension to cure the purportedly deficient report of Dr. Milam. *See* TEX. CIV. PRAC. & REM.CODE ANN. 74.351(c).

### Standard of Review

We review a trial court's order on a motion to dismiss a health care liability claim for an abuse of discretion. *See Jernigan v. Langley,* 195 S.W.3d 91, 93 (Tex. 2006) (per curiam). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner, or if it acts without reference to any guiding rules or principles. *See Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex.2002) (per curiam) (*citing Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985)). We may not substitute our judgment for the trial court's judgment. *See id.* Nor can we find the trial court abused its discretion merely because we would have decided the matter differently. *See Cayton v. Moore,* 224 S.W.3d 440, 444 (Tex.App.-Dallas 2007, no pet.). An abuse of discretion occurs if the trial court clearly failed to analyze and determine the law correctly, or applied the law incorrectly to the facts. *See id.* at 445.

## Applicable Law

An expert report under section 74.351(r) of the Texas Civil Practice and Remedies Code must provide enough information to fulfill two purposes if it is to constitute an objective good faith effort. The report must inform the defendant of the specific conduct the plaintiff has called into question and must provide a basis for the trial court to conclude the claims have merit. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(6) (Vernon Supp.2008); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 879 (Tex.2001); *Gray v. CHCA Bayshore L.P.,* 189 S.W.3d 855, 859 (Tex.App.-Houston [1st. Dist.] 2006, no pet.).

■ An expert report must provide a fair summary of the expert's opinions as of the date of the report regarding the applicable standard of care, the manner in which the care rendered by the physician failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(6). A report cannot merely state the expert's conclusions as to the standard of care, breach, and causation. *See Palacios,* 46 S.W.3d at 879; *Hansen v. Starr,* 123 S.W.3d 13, 20 (Tex.App.-Dallas 2003, pet. denied). The report must explain the basis for the expert's statements and must link the conclusions to the facts. *Bowie,* 79 S.W.3d at 52. The trial court may not draw any inferences and must rely exclusively on the information contained within the four corners of the report. *See Palacios,* 46 S.W.3d at 879; *Gray,* 189 S.W.3d at 859. The report need not marshal all of the plaintiff's proof, but it must include the expert's opinion on each of the statutory elements. *See Ehrlich v. Miles,* 144 S.W.3d 620, 626 (Tex. App.-Fort Worth 2004, pet. denied). The substance of the opinions, and not the technical words used, constitute compliance with the statute. *Id.*

The person rendering the report must also meet the criteria of section 74.351. Section 74.351(r) defines a standard of care expert to mean an expert qualified to testify under the requirements of section 74.401. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(5)(A). To qualify under section 74.401, the expert must be a physician who (1) is practicing medicine at the time of the testimony or at the time the claim arose, (2) has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim, and (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care. TEX. CIV. PRAC. & REM.CODE ANN. § 74.401(a) (Vernon 2005).

■ In determining whether the expert is qualified on the basis of training or experience, the trial court is required to consider whether, at the time the claim arose or at the time of testimony, the expert is board certified or has other substantial training or experience in an area of practice relevant to the claim. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.401(c)(2). Every licensed doctor does not qualify automatically to testify as an expert on every medical question. *See Broders v. Heise,* 924 S.W.2d 148, 152 (Tex.1996). On the other hand, the expert need not be a specialist in the particular branch of the profession for which the testimony is offered. *Blan v. Ali,* 7 S.W.3d 741, 745 (Tex.App.-Houston [14th Dist.] 1999, no pet.).

■ The trial court's focus is the specific issue before the court which would qualify the expert to give an opinion on that particular subject. *Hagedorn v. Tisdale,* 73 S.W.3d 341, 350 (Tex.App.-Amarillo 2002, no pet.) (citing *Broders,* 924 S.W.2d

at 153). If, for example, a subject of inquiry is substantially developed in more than one field, a qualified expert in any of those fields may testify. *Broders*, 924 S.W.2d at 152. If an area is common to and equally recognized and developed in all fields of practice, any physician familiar with the subject may testify as to the standard of care. *Blan*, 7 S.W.3d at 745–46.

### Sufficiency of Dr. Milam's Report

A. Qualifications

■ Dr. Milam is board certified in internal medicine and in medical oncology. She is engaged in the full time practice of oncology and hematology in Fort Worth, Texas, and has been an active member of medical staffs of local hospitals there since 1979.

Dr. Milam first saw Jones in December of 2005 for treatment of liver metastases and a bone metastasis with a moderately differentiated "adenocarcinoma/neuroendocrine" carcinoma. Jones had been seeing Dr. House for treatment of a condition diagnosed previously as intra-articular pathology. After Dr. House recommended shoulder surgery, Jones sought a second opinion and came to Dr. Milam through referrals.

Jones, at age fifty-five, first saw Dr. House in November 2004 as the result of a referral from her primary care physician, Dr. James Allen. Dr. Allen had been treating Jones since 2002 for pain symptoms in her left shoulder area. Dr. Allen diagnosed her with a "torn rotator cuff" and treated her with injections.

On November 4, 2004, Jones underwent an MRI of the left shoulder, which the radiologist interpreted as revealing a 3.5 cm sclerotic lesion in the left proximal humeral metaphysis. Jones had several radiological studies and tests, all of which were interpreted by physician radiologists as demonstrative of a 1.5 cm modular mass in Jones's inferior medial right lung base, which was "not active" on PET scan.

After reviewing Jones's MRI results, Dr. House referred Jones to Dr. Richard Buch, an orthopedic oncologist, and Dr. Mohammad Qasim, an oncologist. Dr. Buch obtained a needle biopsy of the lesion in Jones's left humerus on December 9, 2004, which was reported to be nondiagnostic. That pathology report contained a note that "the amount of abnormal tissue in this specimen is quite limited and increases the likelihood of sampling error. Clinical correction is recommended and excision may be required for more definitive diagnosis."

After reviewing the reports, Dr. Buch suggested shoulder injections as a diagnostic tool to determine the effect on Jones's shoulder pain. Following the injections, Jones's pain decreased and Dr. Buch diagnosed her condition as intra-articular pathology.

Dr. Buch then referred Jones back to Dr. House for intra-articular pathology treatment, and Dr. Buch continued to treat the lesion. At the point Dr. House recommended shoulder surgery as part of his treatment, Jones sought a second opinion from Dr. Corbitt, who referred her to Dr. Mayme Richie–Gillespie. Dr. Richie–Gillespie saw Jones on October 31, 2005 and, as the result of a curettaged open biopsy performed December 6, 2005, discovered extensive metastatic cancer.

Dr. Milam offers the opinion that Dr. House should have recognized that the December 9, 2004 needle biopsy of Jones's shoulder lesion did not definitely preclude a cancer diagnosis and that further testing was indicated in order to obtain an accurate and definitive pathological diagnosis of the lesion. Dr. Milam does not claim to have practiced in the area of orthopedic surgery. She focuses on the adequacy of

the needle biopsy and the suggestion for further testing, and states that this is a universal area of medical knowledge.

In addition to her certifications in internal medicine and medical oncology, Dr. Milam states in her report that she has substantial knowledge and experience with patients who present with a moderately differentiated "adenocarcinoma/neuroendocrine" carcinoma condition, frequently seeing patients following a cancer diagnosis and frequently providing the diagnosis, care, and treatment to patients under those circumstances. She adds that in her twenty-five years of practice she has "received pathological reports, radiological reports, and reports of other special studies and tests which have indicated that the test was nondiagnostic and did not allow for a definitive diagnosis and which required, suggested or recommended that the study be repeated and/or an additional study be performed." She claims that obtaining and reviewing pathology reports as part of diagnosis and treatment is substantially developed in more than one field, including oncology and orthopedics, and the accepted standards of care apply regardless of specialty.

In *Silvas v. Ghiatas,* 954 S.W.2d 50 (Tex.App.-San Antonio 1997, writ denied), the court held that an orthopedic surgeon was qualified to testify as to the standard of care for a radiologist. *Id.* at 53. The surgeon opined that the radiologist was negligent in several particulars, including failing to advise on the need for immediate investigation and treatment of conditions revealed on an X-ray. The court emphasized in *Silvas* that it is common knowledge that orthopedic surgeons and radiologists work closely together and their professions are sufficiently interrelated and their specialties intertwined to establish expertise on the specific issue before the court. *Id.* at 54. *See also*

*Wissa v. Voosen,* 243 S.W.3d 165 (Tex. App.-San Antonio 2007, pet. denied) (orthopedic surgeon qualified to opine on the standard of care for an anesthesiologist during a physical examination to diagnose and recognize follow-up consultation required).

Here, Dr. Milam reviewed the medical records from all of the specialists, including Dr. House. Dr. House was one of the treating and referring physicians for Jones's shoulder problems from November 2004 through October of 2005, including the December 2004 period in question. His diagnosis and treatment involved testing of her shoulder as well as referrals to and from the oncologists. Dr. Milam's conclusion that the acceptable standard of care in this limited area applies without regard to specialty is sufficiently supported by the background, training, and experience she states in the report.

We conclude Dr. Milam's report sufficiently states her qualification under section 74.401(c). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.401(c). No additional report is required for Jones to assert vicarious liability against the professional association. *See Univ. of Tex. Sw. Med. Ctr. v. Dale,* 188 S.W.3d 877, 879 (Tex.App.-Dallas 2006, no pet). Accordingly, the trial court did not abuse its discretion by denying the motion to dismiss on the basis of expert qualifications.

**B. Sufficiency of Report Under Section 74.351(r)(6)**

■ We next turn to House's argument that Dr. Milam's report is deficient under section 74.351(r)(6) because it fails to provide Dr. House a "fair summary" of the standards of medical care, breaches, and causation as to his conduct specifically. House complains that Dr. Milam fails to distinguish the standards applicable to different physicians, she relies on contingent

facts, and she fails to properly address the causal relationship between the standards and the injury, harm, or damages claimed.

On the issue of the December 9, 2004 needle biopsy, Dr. Milam opines that the same standard of care applies to all three defendant physicians. Although Dr. Milam combines all three physicians in portions of her report, she also specifies complaints about Dr. House:

> Likewise, Dr. House, an orthopedic surgeon should have either performed the excision of Ms. Jones' left should [sic] lesion or he should have referred her to Dr. Buch for that very purpose. Although Dr. House had previously referred Ms. Jones to Dr. Buch and Dr. Buch chose not to perform the excision or require further diagnostic work up of her left shoulder lesion, it would be irresponsible for Dr. House to rely upon Dr. Buch's decision in that regard and not utilize his independent medical knowledge as to what was required under these circumstances. Dr. House was a treating physician of Ms. Jones, the medical records demonstrate that he obtained the December 9, 2004 pathology report; therefore, he should have taken the action set forth above. It is my opinion that if Dr. House had done so, Ms. Jones' malignant condition would have been discovered in December 2004 and in all likelihood, many of her damages would have been likely avoided or lessened as set forth with more particularly [sic] below in this report.

This informs Dr. House of the specific conduct Dr. Milam calls into question.

With respect to House's complaint that Dr. Milam relies on contingent and conflicting facts relating to whether he saw the December 9, 2004 pathology report, Dr. Milam's opinion does not depend on the contingency. As noted:

It is also unclear as to whether Dr. House actually received the December 9, 2004 pathology report of Ms. Jones [sic] left shoulder lesion; however, he should have received it according to reasonable and prudent standards of medial [sic] care for the same reasons discussed above relating to Dr. Qasim. Therefore, it is immaterial as to whether Dr. House and Dr. Qasim actually reviewed the report in December 2004 because their responsibility to Ms. Jones was such that they should have known about the biopsy and its results; they should have recommended excision of Ms. Jones in order to receive a definitive diagnosis; but they failed to do so.

Any confusion regarding whether Dr. House actually saw the report is not fatal to the sufficiency of Dr. Milam's report under section 74.351(r)(6).

Finally, House argues that Dr. Milam fails to address the causal relationship between breach of the applicable standard of care and the injury, harm, or damages claimed. House cites no specific facts or omissions. In the report, however, Dr. Milam concludes that had Dr. House received and reviewed the December 9, 2004 needle biopsy, he would have recognized the report was insufficient, further testing would have diagnosed Jones's cancer, and treatments would have started a year earlier. Dr. Milam lists multiple injuries caused by the alleged failure, including intense pain and suffering, memory loss, confusion, and other problems endured as a result of the brain metastases. Given the facts recited by Dr. Milam showing Jones's progress with cancer treatments as of April 18, 2007, Dr. Milam's further conclusion that Jones most likely would be disease-free but for Dr. House's alleged breach, sufficiently satisfies the legal standard.

We conclude Dr. Milam's report provides Dr. House a "fair summary" of the standards of medical care, breaches, and causation as to his conduct specifically, and therefore meets the requirements of section 74.351(r)(6). *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(6). Accordingly, the trial court did not abuse its discretion by denying the motion to dismiss on the basis of sufficiency of the report.

## Conclusion

We affirm the trial court's denial of the motion to dismiss as to Michael A. House, M.D. and Michael A. House, M.D., P.A.