Reversed and Remanded and Memorandum Opinion filed September
23, 2010.



 



 

In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-09-00963-CV



 

Ashish Kapoor M.D., Appellant

V.

The Estate of Margaret E.
Klovenski, Jake Klovenski & Mary Hassler, Individually and as Next Friends, Appellees

 



On Appeal from the 113th
District Court

Harris County, Texas

Trial Court Cause No. 2009-31943



 

MEMORANDUM  OPINION

 

This healthcare liability case is
governed by chapter 74 of the Texas Civil Practice and Remedies Code.  See Tex.
Civ. Prac. & Rem Code Ann. §§ 74.001–.507 (Vernon 2005 & Supp. 2009). 
Jake Klovenski, individually and on behalf of the Estate of Margaret Klovenski,
and Mary Hassler brought wrongful death and survival claims against Dr. Ashish
Kapoor asserting that Dr. Kapoor failed to diagnose cancer in Margaret
Klovenski.  Dr. Kapoor moved to dismiss all claims based on alleged
deficiencies in plaintiffs’ expert report.  Dr. Kapoor brought this
interlocutory appeal challenging the trial court’s order denying the motion to
dismiss.  See Tex. Civ. Prac. & Rem Code Ann. § 51.014(a)(9) (Vernon
2008).  We reverse and remand.

BACKGROUND

The following background is based on
allegations in plaintiffs’ petition and assertions in the expert report
tendered by plaintiffs.  Dr. Kapoor treated Margaret Klovenski between December
2006 and March 2007.  She sought medical advice from Dr. Kapoor on December 12,
2006, regarding a swollen and painful lump on her left thigh.  According to
plaintiffs, Dr. Kapoor ordered x-rays of the leg and a venous Doppler exam;
instructed her to take Tylenol for her pain; and assured Ms. Klovenski that she
should not worry about the lump.  The following month, Dr. Kapoor ordered an
ultrasound of the veins in her leg but not of the lump.  Ms. Klovenski visited
Dr. Kapoor five times over three months regarding the growing and increasingly
painful lump.  However, Dr. Kapoor allegedly ordered no further testing and told
Ms. Klovenski not to worry.  

Ms. Klovenski sought a second opinion
from her urologist, Dr. Pulin Pandya, on March 20, 2007.  Dr. Pandya examined
Ms. Klovenski and immediately determined that she was suffering from a
cancerous growth in her left thigh.  Ms. Klovenski was seen later that day by a
surgeon, Dr. William Kent Johnson, who ordered a MRI exam and CT scans to
verify Dr. Pandya’s diagnosis.  Ms. Klovenski was treated for cancer by various
physicians at the University of Texas M.D. Anderson Cancer Center in Houston,
Texas.  She died on June 23, 2007.  Plaintiffs attribute her death to Dr.
Kapoor’s alleged failure to diagnose the cancer in her leg between December 12,
2006, and March 20, 2007.  

Plaintiffs sued Dr. Kapoor on May 20,
2009, and timely submitted an expert report and curriculum vitae prepared by
Dr. Julie Graves Moy.  See Tex. Civ. Prac. & Rem. Code Ann. §
74.351(a).  Dr. Kapoor moved to dismiss the case, arguing that the expert
report was inadequate because Dr. Moy (1) was unqualified to opine about the
cause of Ms. Klovenski’s death; (2) offered only vague, speculative, and
conclusory causation opinions; and (3) failed to describe applicable standards
of care or articulate Dr. Kapoor’s breach of those standards.  See id. §
74.351(b).  After a hearing, the trial court denied the motion and ruled that
the expert report fully complied with statutory requirements.  Dr. Kapoor
appeals from the trial court’s order denying his motion to dismiss.  See
Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9); Ogletree v. Matthews,
262 S.W.3d 316, 319 (Tex. 2007).

ANALYSIS

I.                  
 Applicable
Law and Standard of Review

A trial court must grant a
defendant’s motion to dismiss a healthcare liability suit with prejudice unless
the plaintiff serves a timely expert report within 120 days of filing the
original petition.  See Tex. Civ. Prac. & Rem. Code Ann. §§ 74.351(a),
(b).  To qualify as a timely expert report, the report must represent a good
faith effort to comply with the statutory requirements for an expert report.  See
id. § 74.351(l).  An expert report is defined as a written report by an
expert that provides a fair summary of the expert’s opinions regarding (1) the
applicable standard of care; (2) the manner in which the care provided failed
to meet that standard; and (3) the causal relationship between that failure and
the injury, harm, or damages claimed.  See id. § 74.351(r)(6); see
also Bowie Mem’l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam);
Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873,
878 (Tex. 2001).        

We review a trial court’s denial of a
motion to dismiss under section 74.351(b) for abuse of discretion.  Wright,
79 S.W.3d at 52 (citing Palacios, 46 S.W.3d at 878); Group v. Vicento,
164 S.W.3d 724, 727 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).  To
determine whether the trial court abused its discretion, we must decide whether
the trial court acted in an arbitrary or unreasonable manner without reference
to any guiding rules or principles.  Wright, 79 S.W.3d at 52; see
also Broders v. Heise, 924 S.W.2d 148, 151 (Tex. 1996).  In making such a
determination, a court of appeals may not substitute its own judgment for the
trial court’s judgment.  Wright, 79 S.W.3d at 52.

II.              
Dr. Moy’s Qualifications

An expert first must establish that
she is qualified to provide a report addressing accepted standards of care,
causation, or both.  See Tex. Civ. Prac. Rem. Code Ann. §§
74.351(r)(5)(A), (C).  Qualifications must appear in the expert report and
cannot be inferred.  See Olveda v. Sepulveda, 141 S.W.3d 679, 683 (Tex.
App.—San Antonio 2004, pet. denied); Hansen v. Starr, 123 S.W.3d 13, 19
(Tex. App.—Dallas 2003, pet. denied).  Accordingly, analysis of expert
qualifications under section 74.351 is limited to the four corners of the
expert’s report and curriculum vitae.  Mem’l Hermann Healthcare Sys. v.
Burrell, 230 S.W.3d 755, 758 (Tex. App.—Houston [14th Dist.] 2007, no pet.)
(citing Palacios, 46 S.W.3d at 878).

To qualify as an expert capable of
providing opinion testimony regarding causation in a healthcare liability claim
against a physician, an expert must satisfy section 74.403.  See Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(r)(5)(C); Thomas v. Alford, 230
S.W.3d 853, 857 (Tex. App.—Houston [14th Dist.] 2007, no pet.).  Section 74.403
states in pertinent part: 

[A] person may qualify as an expert witness on the
issue of the causal relationship between the alleged departure from accepted
standards of care and the injury, harm, or damages claimed only if the person
is a physician and is otherwise qualified to render opinions on that causal relationship
under the Texas Rules of Evidence.

Tex. Civ. Prac. & Rem. Code Ann. § 74.403(a). 
Where a physician’s failure to diagnose is alleged to have harmed a patient, an
expert testifying as to causation must be qualified to opine about the effect
of a timely diagnosis and treatment on the outcome.  See Broders, 924
S.W.2d at 153 (emergency physician was qualified to testify at trial that the
standard of care required diagnosis of head injury and referral of patient for
neurological treatment, but not as to potential effectiveness of proposed
treatments for the undiagnosed neurological condition); Thomas, 230
S.W.3d at 859–60 (radiologist was not qualified to offer expert opinion addressing
whether delayed cancer diagnosis affected patient’s prognosis); cf. Mosely
v. Mundine, 249 S.W.3d 775, 779–80 (Tex. App.—Dallas 2008, no pet.) (emergency
room physician was qualified to opine because proffered expert opinion “related
to the ability of an emergency room physician to interpret a routine chest x-ray
. . . not the diagnosis and treatment for cancer”).  Qualifications may be
demonstrated by prior experience treating similar patients suffering from the
undiagnosed condition at issue.  See, e.g., Estorque v. Schafer,
302 S.W.3d 19, 26–27 (Tex. App.—Fort Worth 2009, no pet.) (expert was qualified
to opine that failure to refer patient for evaluation of ovarian mass caused
loss of kidney function because he had treated patients with similar conditions;
was familiar with complications arising from the condition in such patients;
and had observed those caring for and treating similar patients).  

Dr. Moy’s report states that she is a
“physician specializing in family medicine and emergency medicine.”  The report
states that she is “very familiar with the controlling medical standards
involving the diagnosis and detection of diseases such as cancer, the need for
early and prompt treatment of diseases such as cancer, and the appropriate
treatment of cancer by physicians.”  However, Dr. Moy identified no experience
or credentials to demonstrate that she is qualified to testify about (1) what
treatments would have been available to Ms. Klovenski had Dr. Kapoor diagnosed
her cancer three months earlier; and (2) whether earlier administration of potential
treatments would have resulted in a more favorable prognosis.  On this record,
we conclude that the trial court acted beyond its discretion in concluding that
Dr. Moy meets the statutory qualifications to opine about whether the asserted
delay in diagnosis of Ms. Klovenski’s cancer affected her outcome.  See
Thomas, 230 S.W.3d at 860 (“Francis’s report does not show that he has
knowledge, training or experience in cancer treatment that would qualify
him to give an opinion on the likelihood that an earlier diagnosis could have
produced a better outcome.”) (emphasis in original).

III.           
Dr. Moy’s
Causation Opinion

Dr. Kapoor also argues that Dr. Moy’s
opinion regarding the causal link between Dr. Kapoor’s failure to diagnose
cancer in Ms. Klovenski and her subsequent death is inadequate.  Dr. Moy’s
report states:

Optimal outcomes in the treatment of malignant
diseases such as cancer are based on early diagnosis; a thorough understanding
of the likely behavior of the malignant disease process; prompt, comprehensive,
and aggressive treatment; and frequent and thorough follow-up for the
possibility of recurrence and/or metastases.

. . . . 

I find Dr. Kapoor’s failure to timely diagnose the
cancer in the left thigh of his patient Margaret Klovenski of a four month
period of time . . . directly resulted in the spread of this cancer beyond
therapeutic (surgical, radiation, and chemotheraphy, as provided) control,
leading to Mrs. Klovenski’s ultimate debilitating and painful death, none of which,
it is probable, would have occurred had Dr. Kapoor initially diagnosed the
cancer in his patient’s leg successfully.

 

In providing an expert report on
causation, a claimant must offer more than a general opinion that timely
diagnosis and treatment would have led to “the possibility of a better
outcome.”  Wright, 79 S.W.3d at 52–53.  The expert must explain the
basis of her statements and link her conclusion to the facts.  Id. at
52.    

In a failure-to-diagnose case, the expert
report must explain how the complained-of harm would not have occurred if the
diagnosis had been made in a timely fashion.  See, e.g., Foster v.
Richardson, 303 S.W.3d 833, 842 (Tex. App.—Fort Worth 2009, no pet.) (report
insufficient because it failed to explain how delay in diagnosing six-month-old
ankle injury caused more exhaustive care than if injury had been diagnosed a
month earlier); Craig v. Dearbonne, 259 S.W.3d 308, 312–13 (Tex.
App.—Beaumont 2008, no pet.) (report insufficient because expert stated only that
plaintiff “more likely than not” could have been “successfully treated and
would not have died when she did” if lung condition had been diagnosed sooner);
Jones v. King, 255 S.W.3d 156, 159–60 (Tex. App.—San Antonio 2008, pet.
denied) (mem. op.) (report insufficient because expert failed to explain how
diagnosis of meningitis 48 hours earlier would have prevented injuries). 

In similar healthcare liability cases
predicated on the progression of undiagnosed and untreated cancer, courts
scrutinize reports to determine whether they contain information regarding (1) the
effect of cancer development over time on the patient’s prognosis, and (2) the potential
effectiveness of treatments for the patient’s type of cancer.  See, e.g.,
Thomas, 230 S.W.3d at 858–59 (oncologist’s report sufficient because it
explained that 47-month delay in diagnosis meant that surgically resectable and
curable nodule in liver (stage I cancer) developed into a “metastatic
well-differentiated adenocarcinoma” (stage IV), which was completely untreatable);
see also House v. Jones, 275 S.W.3d 926, 932–33 (Tex. App.—Dallas 2009,
pet. denied) (report sufficient because it explained that positive response to belated
treatment supported opinion that earlier treatment following prompt diagnosis
would have cured patient); Polone v. Shearer, 287 S.W.3d 229, 236–37
(Tex. App.—Fort Worth 2009, no pet.) (reports sufficiently explained that
22-month delay in diagnosis increased risk of metastatic breast cancer,
morbidity, and mortality; prompt diagnosis would have led to treatment that obviated
need for mastectomy); Harris County Hosp. Dist. v. Garrett, 232 S.W.3d
170, 179–181 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (report sufficient
because it explained that progression of “possibly malignant” breast mass
developed into “advanced disease . . . with metastasis” that could have been
prevented if not for delay in communication of diagnosis and treatment); Mosely,
249 S.W.3d at 780–81 (report sufficient because expert explained that undiagnosed
cancerous nodule in lung grew 5cm, requiring more invasive treatment with lower
chance of success).

In her report, Dr. Moy failed to
connect her conclusion to any specific facts regarding  whether  Ms.
Klovenski’s type of cancer was treatable, either before or after its eventual
diagnosis.  Dr. Moy did not state what kind of cancer was diagnosed in Ms.
Klovenski’s leg.  Based on Dr. Moy’s general knowledge about “the need for
early and prompt treatment of diseases such as cancer, and the appropriate
treatment of cancer,” she summarily concluded that the delay in diagnosis
between December 2006 and March 2007 resulted in the general “spread” of the
cancer beyond therapeutic control and caused Ms. Klovenski’s death six months
after her first visit to Dr. Kapoor.  This conclusion requires the court to
infer that (1) different, more effective treatment would have been available
for Ms. Klovenski’s unidentified type of cancer three months earlier, or (2) earlier
treatment would have been more likely to improve Ms. Klovenski’s prognosis.  Such
inferences are not permitted.  Wright, 79 S.W.3d at 53.  Accordingly, we
determine that Dr. Moy’s statements are conclusory, and we hold that the trial
court exceeded its discretion in denying Dr. Kapoor’s motion to dismiss on this
ground.

IV.            
Remand is
Appropriate 

If an expert report has not been
timely served because the elements of the report are found deficient, the court
may grant one 30-day extension to the plaintiff to cure the defect.  See Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(c).  If a court of appeals determines
that a report deemed sufficient by the trial court is in fact deficient, the
court of appeals may remand the case so the trial court can decide whether to
grant a 30-day extension to cure the deficiency.  Leland v. Brandal, 257
S.W.3d 204, 207 (Tex. 2008); Gannon v. Wyche, No. 14-09-00624-CV, 2010
WL 3409449, at *16 (Tex. App.—Houston [14th Dist.] Aug. 31, 2010, no pet. h.). 
In authorizing this practice, “the Legislature struck a careful balance between
eradicating frivolous claims and preserving meritorious ones.”  Leland,
257 S.W.3d at 208.  

Because the available 30-day
extension was neither sought nor granted in this case, the trial court should
consider for the first time on remand whether Dr. Moy’s attempt to satisfy the
statutory requirements for expert qualifications and causation constitutes a
good-faith effort warranting a 30-day extension.  Id. at 207 (“The
statute does not allow for an extension unless, and until, elements of a report
are found deficient, and that did not occur in this case until the court of
appeals so held.”). 

CONCLUSION

We reverse the trial court’s order of
October 23, 2009, and remand for proceedings consistent with this opinion.

                                                                        

                                                            /s/         William J. Boyce

                                                                        Justice                                                                                                                                                                                                                                                                                                                     

 

 

 

Panel consists of Justices Seymore,
Boyce, and Christopher.