

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-20-00253-CV

---

DR. TIMOTHY MOORING AND BSA HOSPITAL, LLC, APPELLANTS

V.

TERESA BRITTON, INDIVIDUALLY AND ON BEHALF OF THE ESTATE
OF JOHN BRITTON, APPELLEE

---

On Appeal from the 251st District Court
Potter County, Texas
Trial Court No. 109,351-C-CV, Honorable Ana Estevez, Presiding

---

February 12, 2021

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Dr. Timothy Mooring and BSA Hospital, LLC, appeal the denial of their motions to dismiss appellee Teresa Britton's healthcare liability claims against them, based on alleged deficiencies in Britton's expert report. We reverse and remand.

Background

We present the background information as pled in Britton's petition. Britton alleges that on November 26, 2017, John Britton presented at the BSA Hospital Emergency Department with pneumonia. On the morning of December 12, Dr. Mooring performed a "28 French Right tube Thoracostomy" on John.[1] According to Britton, Dr. Mooring cut an artery during this procedure. That night, John's symptoms worsened; he developed tachycardia, hypotension, and intrathoracic bleeding, leading Dr. Mooring to drain 750 cubic centimeters of blood. Sadly, John's condition deteriorated, and he died the following day.

Britton filed this lawsuit on December 10, 2019, alleging that BSA and Dr. Mooring were negligent in their treatment of John. Pursuant to the Texas Medical Liability Act ("TMLA"), Britton served an expert report, authored by Dr. Venktesh R. Ramnath, on the defendants on May 15, 2020. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West 2017).[2] BSA and Dr. Mooring filed objections to the report, which the trial court sustained. The trial court granted Britton a thirty-day extension to cure the report's deficiencies, and Britton served Dr. Ramnath's revised report on July 24.[3] BSA and Dr. Mooring again filed objections and motions to dismiss the lawsuit on the basis that the revised report still did

---

[1] We will refer to John Britton as "John" to avoid confusion with the appellee, Teresa Britton.

[2] The parties agreed to an extension of the deadline due to the State of Disaster in Texas caused by the COVID-19 pandemic.

[3] In this opinion, our discussion of Britton's expert report refers to the revised report.

2

not meet the requirements of the TMLA.  Following a hearing, the trial court overruled their objections and denied the motions.  This interlocutory appeal followed.[4]

Standard of Review and Applicable Law

On appeal, BSA and Dr. Mooring argue that the trial court erred in denying their motions to dismiss because the expert report (1) did not support Britton's claim as set forth in her pleadings, (2) did not state specific standards of care applicable to each respective defendant, (3) contained only conclusory allegations of breach, and/or (4) failed to explain how the alleged breaches caused John's death.  In addition, they seek remand to the trial court for an award of attorney's fees and costs.

Under the TMLA, healthcare liability claimants must serve an expert report upon each defendant not later than 120 days after that defendant's answer is filed.  TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a).  An expert report is sufficient under the Act if it provides a fair summary of the expert's opinions regarding applicable standards of care, the manner in which the care rendered failed to meet the standards, and the causal relationship between the failure and the injury.  *Id.* § 74.351(r)(6).  A trial court need only find that a report constitutes a "good faith effort" to comply with the Act's requirements. *Id.* § 74.351(l).  An expert report demonstrates a "good faith effort" when it (1) informs the defendant of the specific conduct called into question and (2) provides a basis for the trial court to conclude the claims have merit.  *Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 223 (Tex. 2018) (per curiam).  An expert report need not marshal all the claimant's

---

[4] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (West Supp. 2020).

3

proof, but a report is insufficient if it merely states the expert's conclusions about the standard of care, breach, and causation. *Id.* A court may not "fill gaps" in an expert report by drawing inferences or guessing what the expert likely meant or intended. *Patterson v. Ortiz*, 412 S.W.3d 833, 835-36 (Tex. App.—Dallas 2013, no pet.).

If a claimant fails to timely serve an adequate expert report, the defendant physician or healthcare provider is entitled to dismissal of the claims against it. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b). We review the denial of a motion to dismiss based on the adequacy of an expert report for an abuse of discretion. *Abshire*, 563 S.W.3d at 223. We must determine whether the trial court acted arbitrarily and without reference to any guiding rules or principles. *Nexion Health at Duncanville, Inc. v. Ross*, 374 S.W.3d 619, 622 (Tex. App.—Dallas 2012, pet. denied). We may not substitute our own judgment for the trial court's judgment, nor will we find the trial court abused its discretion merely because we would have decided the matter differently. *House v. Jones*, 275 S.W.3d 926, 928 (Tex. App.—Dallas 2009, pet. denied).

Analysis

BSA and Dr. Mooring maintain that the expert report provided by Britton is deficient in several ways. Because it is dispositive of this appeal, we address only their argument that the report fails to satisfy the statute's requirement as to causation.

Causation as to BSA

BSA and Dr. Mooring argue that the expert report is not sufficient as to BSA because, among other things, its statement of causation is conclusory. Under the TMLA,

4

regarding causation, an expert report must explain, to a reasonable degree of medical probability, how and why the alleged negligence caused the complained-of injury. *See Jelinek v. Casas*, 328 S.W.3d 526, 536 (Tex. 2010). An expert must explain the basis of his statements and link conclusions to specific facts; a conclusory statement of causation is insufficient. *Id.* at 539. To satisfy the "how and why" requirements, the expert need not prove the entire case or account for all the facts; a report is sufficient if it makes a good faith effort to factually explain how proximate cause will be proven. *Abshire*, 563 S.W.3d at 224.

As to BSA's alleged breach, the report states, "BSA breached [the] standard of care by not providing adequate pre-, intra-, or post-procedure monitoring such that possible complications could not be recognized and intervened upon to prevent clinical harm." The report then addresses the issue of causation thus:

> It is my opinion that the negligent and substandard medical care mentioned above was more likely than not a proximate cause in Mr. Britton's death as follows: the placement of a large bore chest tube and removal of an existing chest tube in a patient with active therapeutic anticoagulation (blood thinning) incurred unnecessary risk of hemorrhage and exacerbation of existing pneumothorax, the clinical consequences of which were not recognized until they were irreversible. But for these factors he would not have developed such a rapid clinical decline and death.

This statement sets out a chain of events that attempts to link (1) the placement of a new chest tube and removal of an existing chest tube while on anticoagulants to (2) an unnecessary risk of hemorrhage and exacerbation of pneumothorax to (3) John's rapid decline and death. This causation chain addresses only the alleged negligent conduct of Dr. Mooring; it does not include a reference to BSA's alleged breach, i.e., failure to provide adequate monitoring. While the report asserts that the "clinical consequences" of the risk

5

of hemorrhage and the exacerbation of pneumothorax "were not recognized until they were irreversible," there is no factual explanation as to how "adequate monitoring" would have changed the outcome. For example, the report does not explain what medical information would have been revealed by adequate monitoring, what medical intervention could have been timely performed in light of such information, and how that intervention would have prevented the ultimate injury. *See, e.g., Abshire*, 563 S.W.3d at 225-26 (report sufficient where expert opined that nursing staff failed to properly document patient's osteogenesis imperfect (OI) and back pain, which led to delay in diagnosis and proper treatment (imaging of the patient's back and a spinal fusion), which led to ultimate injury of paraplegia); *cf. Lovitt v. Colquitt*, No. 05-18-00939-CV, 2019 Tex. App. LEXIS 5727, at *16-17 (Tex. App.—Dallas July 9, 2019, pet. denied) (mem. op.) (report insufficient as to causation where expert did not explain what treatment patient should have received if kept in hospital additional night or how such treatment would have prevented patient's fall or reduced risk of falling).

We conclude that the report fails to make a good faith effort to factually explain how proximate cause will be proven as to BSA. Therefore, we sustain BSA and Dr. Mooring's complaint on appeal that the expert report is insufficient on this basis. We reverse the trial court's order denying appellants' motion to dismiss Britton's claims against BSA.

<u>Causation as to Dr. Mooring</u>

BSA and Dr. Mooring also argue that the expert report is not sufficient as to Dr. Mooring because causation is stated in a conclusory fashion. As discussed above, the report links the placement of a new chest tube and removal of an existing chest tube in a patient on anticoagulants to an unnecessary risk of hemorrhage and exacerbation of pneumothorax. John's injury is said to be acute hemorrhagic shock that led to his death. We therefore look within the four corners of Dr. Ramnath's report to determine whether a chain of events connects Dr. Mooring's alleged breach of the standard of care to the fatal hemorrhage.

The report states that Dr. Mooring breached the standard of care in three ways: (1) "Failing to stop anticoagulants (blood thinner medications) prior to a semi-elective invasive procedure," (2) "Removal of original chest tube prior to placement of a new chest tube for a worsening pneumothorax," and (3) "Choosing a large bore chest tube rather than a small bore chest tube for pneumothorax." Nowhere in Dr. Ramnath's report do we find that any of these acts caused or worsened John's bleeding. Although Britton alleged in her petition that Dr. Mooring severed John's artery when inserting the chest tube, that theory is not articulated in the expert report. Instead, Dr. Ramnath opines that Dr. Mooring's acts and omissions "incurred unnecessary *risk* of hemorrhage and exacerbation of existing pneumothorax, the clinical consequences of which were not recognized until they were irreversible" (emphasis added). An increased risk of a hemorrhage is not enough to show causation of a hemorrhage. *See, e.g., IHS Cedars Treatment Center of DeSoto, Texas, Inc. v. Mason*, 143 S.W.3d 794, 803 (Tex. 2004)

7

("cause in fact is not established where the defendant's negligence does no more than furnish a condition which makes the injuries possible"); *Windsor v. Maxwell*, 121 S.W.3d 42, 48 (Tex. App.—Fort Worth 2003, pet. denied) (no abuse of discretion in dismissing case where expert report alleging "risk of vascular injury" failed to show causal connection to patient's intimal injury and complaint that catheter used was wrong size).

While Dr. Ramnath's report mentions the presence of anticoagulant medications, it does not link that fact to a conclusion that John's bleeding was harmfully compounded by the presence of those medications. Similarly, while the report questions Dr. Mooring's decision to insert a chest tube, it does not link that critique to an opinion that the insertion or removal of a chest tube actually caused or worsened John's bleeding. In sum, Dr. Ramnath does not explain what particular action Dr. Mooring took, or what particular action he failed to take, that led to John's hemorrhage. This failure to opine as to the cause and time of John's hemorrhage renders the expert report fatally deficient. Without an understanding of why and when the bleeding began, we cannot determine that John's hemorrhagic shock was more likely than not caused by a negligent act of or omission by Dr. Mooring. *See Jelinek*, 328 S.W.3d at 536 (expert report must explain, to a reasonable degree of medical probability, how and why the alleged negligence caused the injury).

Therefore, we conclude that the report fails to establish the necessary causal link between the alleged failures to meet the standard of care and John's injury. Accordingly, we sustain BSA and Dr. Mooring's complaint on appeal that the expert report is insufficient on this basis. We reverse the trial court's order denying appellants' motion to dismiss Britton's claims against Dr. Mooring.

8

<u>Attorney's Fees</u>

In their final issue, BSA and Dr. Mooring seek a remand to the trial court for a determination and award of their attorney's fees and costs. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (defendant is entitled to attorney's fees and court costs if plaintiff does not timely serve complying expert report). Because we have determined that the expert report served by Britton does not comply with the TMLA's requirements, we remand the case for the trial court to assess an award of the reasonable attorney's fees and court costs incurred by BSA and Dr. Mooring. *See Rivenes v. Holden*, 257 S.W.3d 332, 341 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (where trial court fails to consider matter, remand is appropriate to allow court to do so).

## Conclusion

We reverse the trial court's order denying the motion to dismiss Britton's claims against BSA and Dr. Mooring. We remand for a determination of attorney's fees and court costs incurred by appellants.

Judy C. Parker
Justice

9