NEXION HEALTH AT DUNCAN-VILLE, INC. d/b/a Duncanville Health Care and Rehabilitation Center, Appellant

v.

Frankie ROSS, Individually and as Personal Representative of the Estate of Connie D. Horsley, Deceased, Appellee.

No. 05–11–01687–CV.

Court of Appeals of Texas, Dallas.

July 10, 2012.

---

Bryan Rutherford, Gregory N. Ziegler, Jacob D. Thomas, MacDonald Devin, PC, Dallas, TX, for Appellant.

Cornelius D. Kasey, Dallas, TX, Rosalyn Renee Tippett, Tippett Law Office, Coppell, TX, for Appellee.

Before Justices BRIDGES, FRANCIS, and LANG.

## OPINION

Opinion By Justice LANG.

In this interlocutory appeal, appellant Nexion Health at Duncanville, Inc. d/b/a Duncanville Health Care and Rehabilitation Center ("Nexion"), a nursing home, asserts a single issue challenging the trial court's order denying, in part, its motion to dismiss certain "specific claims" of appellee Frankie Ross, Individually and as Personal Representative of the Estate of Connie D. Horsley, Deceased, ("Ross") for failure to serve an expert report pursuant to chapter 74 of the Texas Civil Practice and Remedies Code.[1] *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 74.001–.507 (West 2011 & Supp. 2011). We decide against Nexion on its issue. The trial court's order is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit was filed by Ross against Nexion following the death of Ross's father, Connie D. Horsley, who resided at Nexion at the time of his death. The parties do not dispute that the case involves a health care liability claim and the requirements of chapter 74 are therefore applicable. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 74.001–.507.

In her petition, Ross asserted Nexion was negligent and grossly negligent in the care and treatment provided to Horsley

---

1. Nexion asserted two issues in its appellate brief. However, one of those issues, which involved alleged error by the trial court in not awarding attorney's fees and costs to Nexion, was withdrawn by Nexion in its appellate reply brief and is not addressed in this opinion. *See* TEX.R.APP. P. 47.1; *see also Capps v. Nexion Health at Southwood, Inc.,* 349 S.W.3d 849, 872 (Tex.App.-Tyler 2011, no pet.).

and, as a result, Horsley sustained a fall and head injury that caused his death. In paragraph twelve of her petition, Ross contended in relevant part that Nexion was "negligent in the following respects and particulars among others":

A. In failing to properly perform the medical treatment necessary to the Plaintiff's welfare according to the standards set by the medical and nursing home profession;

B. By failing to recognize and/or acknowledge its recognition of the Plaintiff's symptoms that resulted from its treatment of the Plaintiff;

C. By failing to inform the Plaintiff or family of Mr. Horsley's true physical state after treatment and/or after the injury, constituting "fraudulent concealment" by Defendant, of Defendant's negligence resulting in additional harm and injury to the Plaintiff;

D. By failing to fully and completely disclose the risks and/or hazards of not having injured patient immediately examined by health care professionals who [were] better able and equipped to treat such injury than the Defendant;

E. By failing to consult a specialist in the field of head injuries and/or neurology or neurosurgery, when the Defendant knew or should have known that its skills, knowledge or facilities were inadequate to properly treat the Plaintiff under the circumstances as they then existed;

F. Failing to adhere to the acceptable standards for care of patients in the medical and/or nursing home profession by failing to properly observe significant changes in the patient's condition and alert a physician; by failing to properly assess the patient's needs and evaluate the medical condition of the patient; by failing to implement a proper course of nursing care based upon the existing condition of the patient; by failing to document a significant change in the patient's symptoms on the medical chart; by failing to properly restrain the patient who due to the medical condition of that patient was unable to function unattended; by failing to recognize the adverse effects of a medication administered by the staff; by failing to competently carry out the orders of the physician in charge of the patient's care on the occasion in question;

G. Failing to adhere to the acceptable standards for care of patients by failing to timely consult a specialist in the field.

Additionally, Ross served Nexion with expert reports from Mark Levine, a licensed nursing home administrator, and Dr. Lige B. Rushing, Jr., a practicing physician licensed by the State of Texas.

Nexion filed a general denial answer and a "Motion to Dismiss for Failure to Comply with Chapter 74 Expert Report Requirements." In its motion to dismiss, Nexion asserted "Plaintiff alleges in his Original Petition that Defendant was negligent in numerous respects, but Plaintiff's experts' reports only address a few of those allegations." Nexion contended the trial court "must dismiss all of Plaintiff's claims that have not been addressed in Plaintiff's experts' reports." Specifically, Nexion argued in part that the reports of Rushing and Levine "fail to address Plaintiff's allegations that Defendant was negligent in the following respects," then listed ten items. The first four items listed by Nexion were identical to items B through E of paragraph twelve of Ross's petition. Items five through nine of Nexion's list were identical to portions of item F of paragraph twelve of the petition, but did not include the portions of item F that stated "by failing to implement a proper course of nursing care based upon the existing condition of the patient" and "by

failing to properly restrain the patient who due to the medical condition of that patient was unable to function unattended." Item ten on Nexion's list was identical to item G of paragraph twelve. Additionally, Nexion contended the reports of Rushing and Levine failed to address Ross's allegations as to gross negligence.

At the hearing on Nexion's motion to dismiss, Nexion argued in part that Ross had "alleged 13 separate causes of action," and the expert reports "only support three of them." Nexion stated that the three "causes of action" supported by the expert reports included "the cause of action listed number A, under paragraph 12" of the petition and two "causes of action" in item F of paragraph twelve: "failing to implement a proper course of nursing care based upon the existing condition of the patient" and "failing to properly restrain the patient who due to the medical condition of that patient was unable to function unattended." Nexion requested that all "unsupported claims" of Ross, including the ten specifically listed in the motion to dismiss, be dismissed with prejudice pursuant to chapter 74.

The trial court granted Nexion's motion to dismiss the first two "claims" listed by Nexion in the motion, which were items B and C from paragraph twelve of Ross's petition: "failing to recognize and/or acknowledge its recognition of the Plaintiff's symptoms that resulted from its treatment of the Plaintiff" and "failing to inform the Plaintiff or family of Mr. Horsley's true physical state after treatment and/or after the injury, constituting 'fraudulent concealment' by Defendant, of Defendant's negligence resulting in additional harm and injury to the Plaintiff." The trial court denied Nexion's motion to dismiss in all other respects. This interlocutory appeal timely followed. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(9) (West Supp. 2011).

## II. DISMISSAL PURSUANT TO CHAPTER 74

### A. Standard of Review

Generally, we review a trial court's order on a motion to dismiss a health care liability claim under chapter 74 for an abuse of discretion. *See Jernigan v. Langley,* 195 S.W.3d 91, 93 (Tex.2006); *Am. Transitional Care Ctrs. of Tex. v. Palacios,* 46 S.W.3d 873, 875 (Tex.2001). Under this standard, we must determine whether the trial court acted arbitrarily and without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex. 1985). A trial court has no discretion in determining what the law is or in applying the law to the facts. *See Petty v. Churner,* 310 S.W.3d 131, 134 (Tex.App.-Dallas 2010, no pet.).

### B. Applicable Law

Section 74.351(a) of the civil practice and remedies code provides in relevant part that "[i]n a health care liability claim, a claimant shall, not later than the 120th day after the date the original petition was filed, serve on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). If, as to a defendant physician or health care provider, an expert report has not been served within the specified time period, "the court, on the motion of the affected physician or health care provider, shall ... enter an order that ... dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim." *Id.* § 74.351(b).

Chapter 74 defines "claim" as "a health care liability claim." *Id.* § 74.351(r)(2). In turn, a "health care liability claim" is defined as

a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

*Id.* § 74.001(a)(13).

"Expert report" is defined in chapter 74 as

a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

*Id.* § 74.351(r)(6). An expert report required by chapter 74 is meant to serve two purposes: (1) to "inform the defendant of the specific conduct the claimant is questioning" and (2) to "provide a basis for the trial court to conclude that the claims have merit." *Leland v. Brandal,* 257 S.W.3d 204, 206–07 (Tex.2008) (quoting *Am. Transitional Care Ctrs. of Tex.,* 46 S.W.3d at 879); *Baylor Med. Ctr. at Waxahachie v. Wallace,* 278 S.W.3d 552, 559 (Tex.App.-Dallas 2009, no pet.).

### C. Application of Law to Facts

In its appellate brief, Nexion asserts the trial court "abused its discretion when it failed to dismiss Ross's specific claims that were not supported by a Chapter 74 expert report." Additionally, during oral argument before this Court, Nexion stated its issue as follows: "Whether, when a health care liability claimant pleads specific acts of negligence—factual discrete acts—the claimant's failure to provide an expert report as to those specific, discrete factual acts requires dismissal of those specific acts." Nexion concedes in its appellate reply brief that it "has not contested the adequacy of Ross's expert reports with respect to three specific liability theories," namely the three that were described at the hearing on the motion to dismiss as being supported by Ross's experts' reports. However, Nexion contends Ross's failure to provide an expert report addressing the eight "specifically-pled acts of negligence" as to which the motion to dismiss was denied requires "dismissal of such acts." Specifically, Nexion argues in part that "[t]he plain language of Chapter 74 requires an expert report to link each alleged failure to meet the standard of care to the injury alleged," and Ross's reports did not do so. Further, Nexion contends Ross's reports failed to meet the requirements to (1) inform the defendant of the specific conduct that the plaintiff calls into question and (2) provide a basis for the trial court to conclude that the claims have merit. Finally, Nexion asserts that "[b]ecause dismissal is required as to Ross's ordinary negligence claims, dismissal was required as to her gross negligence claims."

In response, Ross contends the trial court did not err by denying, in part, Nexion's motion to dismiss because "as long as the expert reports in this case adequately address at least one liability theory within a claim of negligence—which they do—[Ross] has satisfied the statutory requirements of [chapter 74]" and, regardless, the reports of Rushing and Levine, combined, "sufficiently address each of the

eight counts of negligence raised by [Nexion]."

In support of her first argument, Ross cites *Certified EMS, Inc. v. Potts,* 355 S.W.3d 683 (Tex.App.-Houston [1st Dist.] 2011, pet. granted). In that case, plaintiff Cherie Potts alleged she was assaulted by a male nurse, Les Hardin, who was employed by Certified EMS, a nurse staffing agency. *Id.* at 686. Potts sued Certified EMS asserting that it was "vicariously liable for Hardin's conduct under a respondeat superior theory and directly liable for its own negligence in training and supervising Hardin." *Id.* Potts served her expert reports under section 74.351, and Certified EMS objected to the reports and sought dismissal. *Id.* After the trial court denied Certified EMS's motion to dismiss, Certified EMS brought an interlocutory appeal. *Id.* at 685, 687–88.

The First Court of Appeals in Houston stated that Potts's experts' reports supported "Potts's theory that Certified EMS is vicariously liable under the doctrine of respondeat superior," but did not "specifically address how Certified EMS might be directly liable for its own conduct." *Id.* at 687. The court framed the issue presented as "whether the expert report must address both vicarious and direct liability theories for both theories to move past the expert report stage or whether a report adequate as to one of those theories is sufficient for the entire cause of action to move to the next stage." *Id.* at 690. To resolve that question, the court looked to "(1) the law concerning construction of a statute, (2) the plain language of the statute, (3) the objectives of the legislation and consequences of the construction of the statute, and (4) the conflict in the existing case law." *Id.*

The First Court of Appeals observed that a health care liability claim is defined by section 74.001(a)(13) as a "cause of action" that meets certain requirements. *Id.* at 691. The court stated the supreme court has described a "cause of action" as "a fact or facts entitling one to institute and maintain an action, which must be proved to order to obtain relief," and as a "group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person." *Id.* (quoting *In re Jorden,* 249 S.W.3d 416, 421 (Tex.2008)). According to the court of appeals, "[r]eplacing the word 'claim' with the term 'cause of action' and its definition, the plain language in section 74.351(a) requires the claimant to file an expert report for each physician or health care provider against whom a cause of action—i.e., group of operative facts giving rise to one or more bases for suing—is asserted." *Id.* The court concluded that "[b]y focusing on a cause of action rather than particular liability theories that may be contained within a cause of action, the plain language does not require an expert report to set out each and every liability theory that might be pursued by the claimant as long as at least one liability theory within a cause of action is shown by the expert report." *Id.* Consequently, the court reasoned, an entire cause of action must be dismissed when the expert report fails to "set[ ] out at least one liability theory within a cause of action." *Id.* at 692. However, the court concluded, "if at least one liability theory within a cause of action is shown by the expert report, then the claimant may proceed with the entire cause of action against the defendant, including particular liability theories that were not originally part of the expert report, as long as those liability theories are contained within the same cause of action." *Id.*

The court stated that although Potts had asserted two bases for a potential recov-

ery, both arose from the same group of operative facts. *Id.* at 699. Therefore, the court reasoned, Potts had asserted "one 'cause of action' and thus one 'claim' under chapter 74." *Id.* Because Potts's expert report adequately addressed at least one liability theory for that cause of action, the court affirmed the trial court's order denying Certified EMS's motion to dismiss. *Id.* at 700.

The court of appeals in *Potts* acknowledged "[i]ntermediate courts of appeals are split concerning whether an expert report adequate as to at least one liability theory within a cause of action is sufficient to permit other liability theories within the same cause of action to proceed although the expert report is deficient with respect to other theories." *Id.* at 695.[2] However, the court stated it had not found any case "that has performed a statutory analysis of the meaning of claims and causes of action in the context of a medical expert report." *Id.* at 698.

Additionally, the court specifically rejected Certified EMS's argument that its holding "contradicts Chapter 74's notification policy by allowing a plaintiff to assert a direct liability claim without ever informing the defendant of any of its specific conduct." *Id.* at 693. The court stated that because its holding allows a plaintiff to pursue a liability theory not found in the expert report only if the additional theory arises out of the same group of operative facts set forth in the expert report and is asserted against the same defendant, the defendant is "on notice concerning the conduct that forms the basis of the cause of action." *Id.* Further, the court stated

> Our holding not only places the defendant on notice concerning the cause of action, but it also satisfies the other purpose of the expert report by functioning as a gatekeeper. We require early dismissal of a particular defendant if the expert reports fail to show that there is a cause of action against a defendant. . . . If we were to narrowly construe the word "claim" to mean a particular liability theory—rather than the group of operative facts giving rise to one or more basis for suing—the dismissal contemplated by section 74.351(b) would require dismissal with prejudice only as to that particular theory. This is contrary to the intent of the statute to dismiss early a defendant from a lawsuit.

*Id.* (citations omitted). Finally, in response to Certified EMS's argument that its holding would allow a plaintiff to "later dismiss vicarious liability theories and pursue direct liability theories never presented in the expert report," the court stated

---

**2.** In support of that statement, the First Court of Appeals cited *Baylor College of Medicine v. Pokluda*, 283 S.W.3d 110, 123 n. 3 (Tex.App.-Houston [14th Dist.] 2009, no pet.) (declining to address adequacy of report concerning pre-surgery breaches of standard of care when expert report adequately addressed breaches occurring during surgery); *Pedroza v. Toscano*, 293 S.W.3d 665, 668 (Tex.App.-San Antonio 2009, no pet.) (concluding that when testifying expert relied on different acts than those disclosed by Chapter 74 expert report, testifying expert was not precluded from testifying because he was "not asserting a different cause of action, only a different negligence theory"); *Schmidt v. Dubose*, 259 S.W.3d 213, 218 (Tex.App.-Beaumont 2008, no pet.) ("Multiple causes of action do not arise dependent on whether the physician was negligent before, during, or after the wrong cut."); and *Farishta v. Tenet Healthsystem Hospitals Dallas, Inc.*, 224 S.W.3d 448, 455 (Tex.App.-Fort Worth 2007, no pet.) (affirming denial of dismissal as to some injuries but ordering dismissal as other injuries where appellant's petition alleged multiple injuries resulting from doctor's failure to meet same standard of care yet expert report addressed only some injuries). *See Potts*, 355 S.W.3d at 695–96. The First Court of Appeals correctly noted that this Court has not specifically addressed the issue. *See id.* at 696–97.

[T]he purpose of the expert report is to serve as a gatekeeper that allows non-frivolous causes of action against a defendant to move forward past an initial stage so that full discovery concerning the lawsuit may take place. After full discovery has taken place, a plaintiff's approach to a lawsuit might vary from its initial approach, which is permitted under the expert report statute, as long as the liability theories underlie the same cause of action.

*Id.* at 694 (citing *Jorden,* 249 S.W.3d at 421).

Nexion argues in its appellate reply brief that "even if the Texas Supreme Court does not reverse *Potts* after it hears arguments, *Potts* is distinguishable because it applies to future, not-yet-pled liability theories against health care defendants." Further, Nexion asserts the supreme court's opinion in *Jorden* addressed whether the requirements of chapter 74 applied to a lawsuit that "was not even filed yet." Nexion contends that unlike the "potential future claims" at issue in *Potts* and *Jorden,* Ross "chose to specifically identify each of her specific liability theories" against Nexion, yet "failed to support the challenged theories with an expert report."

However, the opinion in *Potts* states that the plaintiff in that case pleaded both direct and vicarious liability, but did not file an expert report supporting her direct liability claim. *See Potts,* 355 S.W.3d at 686, 699–700. We cannot agree with Nexion that *Potts* involved only "future, not-yet-pled liability theories." *See id.; see also Marino v. Wilkins,* —— S.W.3d ——, ——, 2012 WL 749997 (Tex.App.-Houston [1st Dist.] 2012, pet. filed) (rejecting argument that *Potts* should be limited to cases where report was silent as to particular theory).

■ We find *Potts* persuasive. Applying the reasoning of *Potts,* we cannot agree with Nexion that "[t]he plain language of Chapter 74 requires an expert to link each alleged failure to meet the standard of care to the injury alleged." *See Potts,* 355 S.W.3d at 692–94. Further, for the reasons set out in *Potts* and described above, we disagree with Nexion's position that an expert report that does not address each "specific act of negligence" pleaded by a plaintiff cannot satisfy the two intended purposes of the expert report requirement, to (1) "inform the defendant of the specific conduct the claimant is questioning" and (2) "provide a basis for the trial court to conclude that the claims have merit." *See id.* at 693–94.

Now we address an assertion by Nexion in oral argument before this Court that this Court's opinion in *Baylor Med. Ctr. at Waxahachie* supports its position as to Ross's alleged failure to satisfy the intended purposes of an expert report. In that case, the appellant contended a medical expert's report was insufficient to satisfy Chapter 74's required statutory element of causation because the report (1) was conclusory as to treatment opinions and there was a "causal disconnect"; (2) was internally inconsistent; (3) failed to eliminate other possible causes for the patient's condition; and (4) failed to identify the manner in which each health care provider failed to meet the standard of care. *Baylor Med. Ctr. at Waxahachie,* 278 S.W.3d at 559. That case did not involve the issue of whether an expert's report must address all "specific acts of negligence" pleaded by a plaintiff. *See id.* Therefore, Nexion's reliance on that case is misplaced.

■ In the case before us, Ross's petition shows that all "specific liability theories" pleaded by her as to negligence arise from the same group of operative facts. Therefore, Ross has asserted one "cause of action," and thus one "claim," for negli-

gence. *See Potts*, 355 S.W.3d at 699. As described above, Nexion concedes it "has not contested the adequacy of Ross's expert reports" respecting three of those "specific liability theories." Accordingly, we conclude the trial court did not err by denying, in part, Nexion's motion to dismiss as to eight other "specific liability theories" within Ross's cause of action for negligence. *See id.* at 700. Further, because Nexion's contention respecting the dismissal of Ross's "gross negligence claims" is premised on the dismissal of Ross's "ordinary negligence claims," we conclude the trial court did not err by denying Nexion's motion to dismiss as to Ross's "gross negligence claims."

### III. CONCLUSION

We decide against Nexion on its sole issue. The trial court's order is affirmed.