**Reverse, Render, and Remand; Opinion Filed February 21, 2017**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-00663-CV

**HICKORY TRAIL HOSPITAL, L.P. D/B/A HICKORY TRAIL HOSPITAL, Appellant**
**V.**
**CHRISTOPHER WEBB AND MELISSA HAYES INDIVIDUALLY AND AS NEXT OF FRIENDS FOR H.H., A MINOR, Appellees**

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-15-01512**

## MEMORANDUM OPINION

Before Justices Lang, Brown, and Whitehill
Opinion by Justice Lang

This is an interlocutory appeal by Hickory Trail Hospital, L.P., d/b/a Hickory Trail Hospital ("Hickory Trail") of the denial of its motion to dismiss the health care liability claims of appellees, Christopher Webb and Melissa Hayes, for failure to serve expert reports that comply with section 74.351(b) of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(b). Specifically, appellant Hickory Trail contends the trial court abused its discretion because the expert report provided by appellees is inadequate in two ways: (1) the expert report "failed to illustrate [Dr. Dunn's] qualifications to offer the opinions . . . regarding the standard of care for a hospital's policies and procedures;" and (2) the expert report failed to "provide, in a non-conclusory fashion, an opinion that provides a causal link between the alleged

breach of the standard of care and the damages claimed." Appellees contend the trial court did not abuse its discretion by denying appellant's motion to dismiss.

We decide appellant's issue in its favor. For the reasons identified below, we reverse the trial court's May 31, 2016 order denying appellant's motion to dismiss, render judgment dismissing appellees' claims against appellant with prejudice. Further, we remand this case to the trial court to determine any reasonable attorney's fees and costs to be awarded to appellant pursuant to section 74.351(b)(1) of the civil practice and remedies code. TEX. CIV. PRAC. & REM. CODE ANN. 74.351(b)(1); TEX. R. APP. P. 43.2. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

## I. Factual and Procedural Context

On March 10, 2014 a minor ("H.H.") was admitted to Hickory Trail Hospital. Appellees allege that a mental health technician employed by appellant Hickory Trail entered H.H.'s room and sexually assaulted her on March 14–15, 2014. On February 6, 2015, appellees filed a healthcare liability lawsuit against Hickory Trail alleging negligence. Hickory Trail timely answered on April 21, 2015.

Appellees served appellant Hickory Trail with an expert report by Mr. Richard Bays, a nurse, on August 14, 2015. Hickory Trail objected to the report as inadequate and filed a motion to dismiss appellees' claims for "failure to provide an adequate expert report" as required by Texas Civil Practice & Remedies Code § 74.351. Appellees responded to appellant's objections and simultaneously filed a motion for a thirty day extension to cure any deficiencies in the expert report. TEX. CIV. PRAC. & REM. CODE § 74.351(c). The trial court sustained Hickory Trail's objections, but denied its motion to dismiss. The trial court also granted appellees a thirty day extension to cure the deficiencies in the expert report.

On April 21, 2016 appellees timely provided appellant Hickory Trail with a supplemental export report by Dr. Mitchell Dunn and his curriculum vitae ("CV"). Then, on April 29, 2016, appellant filed amended objections to Dr. Dunn's expert report and CV and a motion to dismiss, arguing that the report was inadequate. Appellant contended that Dr. Dunn's report and CV were inadequate in two ways: (1) Dr. Dunn's "report and curriculum vitae failed to illustrate his qualifications to offer the opinions in his report, specifically, Dr. Dunn's opinions regarding the standard of care for a hospital's policies and procedures;" and (2) Dr. Dunn's report "failed to provide, in a non-conclusory fashion, an opinion that provides a causal link between the alleged breach of the standard of care and the damages claimed." The trial court overruled appellant's objections and denied appellant's motion to dismiss on May 31, 2016. Hickory Trail filed its Notice of Appeal on June 6, 2016.

On appeal appellant Hickory Trail asserts the expert report appellees provided is inadequate for the same reasons argued in the trial court. We conclude the trial court abused its discretion in denying appellant's motion. Accordingly, we reverse the trial court's order and render judgment dismissing appellees' claims with prejudice.

## II. Dismissal Pursuant to Chapter 74

Appellant argues the trial court abused its discretion in failing to grant its motion to dismiss because Dr. Dunn was not qualified to provide opinions on the standard of care and because Dr. Dunn's opinions as to causation in his expert report are conclusory. Appellees respond that "Dr. Dunn's CV standing on its own clearly illustrate that he is more than qualified to offer opinions regarding the subject matter" and that "his report is not conclusory and it clearly outlines to Appellant how if Appellant had had policies and procedures in place that [H.H.] would not have been sexually assaulted by its employee." Appellees assert that Dr. Dunn

–3–

"is absolutely an expert with knowledge, skill, experience, training, or education of general policies at psychiatric hospitals."

*A. Standard of Review*

"Generally, we review a trial court's order on a motion to dismiss a health care liability claim under chapter 74 for an abuse of discretion." *Nexion Health at Duncanville, Inc. v. Ross*, 374 S.W.3d 619, 622 (Tex. App.—Dallas 2012, pet. denied) (citing *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006); *Am. Transitional Care Ctrs. of Tex. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001)). This Court also "review[s] a trial court's rulings on the adequacy of an expert report under an abuse-of-discretion standard." *Hollingsworth v. Springs*, 353 S.W.3d 506, 512 (Tex. App.—Dallas 2011, no pet.) (citing *Palacios*, 46 S.W.3d at 877). "Under this standard, we must determine whether the trial court acted arbitrarily and without reference to any guiding rules or principles." *Ross*, 374 S.W.3d at 622 (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)); *see Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). In reviewing a trial court's decision under this standard, we do not "substitute our judgment for the trial court's judgment." *House v. Jones*, 275 S.W.3d 926, 928 (Tex. App.—Dallas 2009, pet. denied) (citing *Wright*, 79 S.W.3d at 52). "Nor can we find the trial court abused its discretion merely because we would have decided the matter differently." *Id.* (citing *Cayton v. Moore*, 224 S.W.3d 440, 444 (Tex. App.—Dallas 2007, no pet.)).

"Under an abuse of discretion standard, 'close calls must go to the trial court.'" *Hickory Trail Hospital, L.P. v. Loya*, No. 05–16–00453–CV, 2016 WL 7376559, at *3 (Tex. App.—Dallas Dec. 20, 2016) (mem. op.) (citing *Larson v. Downing*, 197 S.W.3d 303, 304 (Tex. 2006) (per curiam)). However, "[a] trial court has no discretion when determining what the law is or in applying the law to the facts." *Baylor Med. Ctr. at Waxahachie, Baylor Health Care Sys. v. Wallace*, 278 S.W.3d 552, 555–56 (Tex. App.—Dallas 2009, no pet.) (citing *Cayton*, 224 S.W.3d

at 445). "A clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *Id*. at 556 (citing *Cayton*, 224 S.W.3d at 445).

*B. Applicable Law–Adequacy of a Medical Expert's Report*

"Section 74.351(a) of the civil practice and remedies code provides in relevant part that '[i]n a health care liability claim, a claimant shall, not later than the 120th day after the date the original petition was filed, serve on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted.'" *Ross*, 374 S.W.3d at 622 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a)). "An expert report required by chapter 74 is meant to serve two purposes: (1) to 'inform the defendant of the specific conduct the claimant is questioning' and (2) to 'provide a basis for the trial court to conclude that the claims have merit.'" *Id*. at 623 (citing *Leland v. Brandal*, 257 S.W.3d 204, 206–07 (Tex. 2008)). "If, as to a defendant physician or health care provider, an expert report has not been served within the specified time period, 'the court, on the motion of the affected physician or health care provider, shall . . . enter an order that . . . dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim.'" *Id*. at 622 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b)).

"Chapter 74 defines 'claim' as 'a health care liability claim.'" *Id*. at 623 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(2)). In turn, a "health care liability claim" is defined as

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13). "Expert report" is defined in chapter 74 as

> a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in

which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). "A court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(l). "A valid expert report has three elements: it must fairly summarize the applicable standard of care; it must explain how a physician or health care provider failed to meet that standard; and it must establish the causal relationship between the failure and the harm alleged." *Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 630 (Tex. 2013) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (West 2011)). "If a report omits any of the statutory elements, it cannot be a good faith effort." *Cayton*, 224 S.W.3d at 445 (citing *Eichelberger v. Mulvehill*, 198 S.W.3d 487, 489 (Tex. App.—Dallas 2006, pet. denied)).

"A report need not marshal all the plaintiff's proof, but it must include the expert's opinion on each of the elements identified in the statute." *Palacios*, 46 S.W.3d at 878 (decided under section 13.01 of the predecessor statute, the Medical Liability and Insurance Improvement Act, previously codified at article 4590i of the Texas Revised Civil Statutes); *see Loaisiga v. Cerda*, 379 S.W.3d 248, 257–58 (Tex. 2012) (applying Palacios's expert report analysis to the TMLA). "The report can be informal in that the information in the report does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial." *Palacios*, 46 S.W.3d at 879. "Also, it is the substance of the opinions, not the technical words used, that constitutes compliance with the statute." *Baylor Univ. Med. Ctr. v. Rosa*, 240 S.W.3d 565, 570 (Tex. App.—Dallas 2007, pet. denied) (citing *Ehrlich v. Miles*, 144 S.W.3d 620, 626–27 (Tex. App.—Fort Worth 2004, pet. denied)). "In determining a report's sufficiency, the court

may not look beyond the report itself because all information relevant to the inquiry should be contained [within] the document's four corners." *Christian Care Ctrs., Inc. v. Golenko*, 328 S.W.3d 637, 641 (Tex. App.—Dallas 2010, pet. denied) (citing *Palacios*, 46 S.W.3d at 878).

### 1. Qualifications of a Medical Expert

For purposes of the expert report, "a person giving opinion testimony regarding whether a health care provider departed from accepted standards of health care" must be qualified to testify. TEX. CIV. PRAC. & REM. CODE § 74.351(r)(5)(B). Section 74.402(b) provides that a person is qualified to testify only if the person:

> (1) is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant health care provider is an individual, at the time the testimony is given or was practicing that type of health care at the time the claim arose;

> (2) has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and

> (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care.

TEX. CIV. PRAC. & REM. CODE § 74.402(b).

"The proponent of an expert report has the burden to show that the expert is qualified." *Hendrick Medical Ctr. v. Conger*, 298 S.W.3d 784, 786 (Tex. App.—Eastland 2009, no pet.) (citing *Broders v. Heise*, 924 S.W.2d 148, 151–52 (Tex. 1996)).

"Section 74.402(b) makes it clear that different standards of care apply to physicians and health care providers." *Wallace*, 278 S.W.3d at 558 (citing *Simonson v. Keppard*, 225 S.W.3d 868, 872 (Tex. App.—Dallas 2007, no pet.)).

> When a physician fails to state in his expert report or affidavit that he has knowledge of the standard of care applicable to the specific types of health care providers involved in the claim, or that he has ever worked with or supervised the specific types of health care providers involved in the claim, the physician is not qualified on the issue of whether the health care provider departed from the accepted standards of care for health care providers.

*Id.* However, "'expert qualifications should not be too narrowly drawn.'" *Golenko*, 328 S.W.3d at 643 (quoting *Downing*, 197 S.W.3d at 305). "Rather, the trial court should determine whether the proffered expert has 'knowledge, skill, experience, training, or education regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject.'" *Id.* (quoting *Broders*, 924 S.W.2d at 153–54 (Tex. 1996)). "The focus is on whether the expert's expertise goes to the very matter on which he is to give an opinion." *Id.*

"In deciding whether an expert is qualified, the trial court 'must ensure that those who purport to be experts truly have expertise concerning the actual subject about which they are offering an opinion.'" *Reed v. Grandbury Hosp. Corp.*, 117 S.W.3d 404, 410 (Tex. App.—Fort Worth 2003, no pet.) (citing *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 499 (Tex. 2001)). "General experience in a specialized field is insufficient to qualify a witness as an expert." *Id.* (citing *Pack v. Crossroads, Inc.*, 53 S.W.3d 492, 506 (Tex. App.—Fort Worth 2001, pet. denied)).

### 2. Content of a Medical Expert's Report

"A report cannot merely state the expert's conclusions as to the standard of care, breach, and causation." *Wallace*, 278 S.W.3d at 557 (citing *Palacios*, 46 S.W.3d at 879; *Hansen v. Starr*, 123 S.W.3d 13, 20 (Tex. App.—Dallas 2003, pet. denied); *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 859 (Tex. App.—Houston [1st] 2006, no pet.); *Garcia v. Marichalar*, 198 S.W.3d 250, 254 (Tex. App.—San Antonio 2006, no pet.)). "A conclusory statement is one that expresses a factual inference without stating the underlying facts on which the inference is based." *Hendrick Medical Ctr.*, 298 S.W.3d at 789 (citing *Arkoma Basin Exploration Co. v. FMF Assocs. 1990–A, Ltd.*, 249 S.W.3d 380, 389 n. 32 (Tex. 2008)). Instead, "[t]he expert must explain the basis for his statements and must link his conclusions to the facts." *Id.* (citing *Wright*, 79 S.W.3d at 52; *Gray*, 189 S.W.3d at 859; *Garcia*, 198 S.W.3d at 254). "A trial court may not

draw any inferences." *Wallace*, 278 S.W.3d at 557 (citing *Palacios*, 46 S.W.3d at 879; *Gray*, 189 S.W.3d at 859). "Instead, the trial court must rely exclusively on the information contained within the four corners of the report." *Id.* (citing *Palacios*, 46 S.W.3d at 879; *Gray*, 189 S.W.3d at 859). The expert must "explain, to a reasonable degree, how and why the breach caused the injury based on the facts presented." *Jelinek v. Casas*, 328 S.W.3d 529 (Tex. 2010).

*C. Application of Law to the Facts*

*1. Dr. Dunn's Qualifications*

Appellant first contends the trial court abused its discretion by refusing to dismiss all of appellees' claims because "Dr. Dunn's report and curriculum vitae fail to establish his qualifications." Appellant Hickory Trail argues that "Dr. Dunn fails to show how he is qualified to opine as to what policies and procedures the psychiatric hospital should implement" and "offers no information as to how he is qualified to opine as to what the standard of care for hospital policies and procedures is." Appellees respond by stating that, "Dr. Dunn is clearly qualified to opine as [to] what [] policies and procedures should have been implemented at Hickory Trail Hospital. . ." Mindful of the above standards, we examine the qualifications stated in Dr. Dunn's report.

Dr. Dunn states the following about his qualifications:

> . . . I am a Board-certified psychiatrist with added qualifications in forensic psychiatry. I currently work as the Medical Director of the Forensic Program at Terrell State Hospital, and I have a part-time private practice in adult and forensic psychiatry in Dallas, Texas. During my twenty one years at Terrell State Hospital, I three times served as the acting Clinical Director. In addition, I currently serve as the Assistant Clinical Director at the hospital. In those roles and as Medical Officer of the Day, I have had the opportunity on many occasions to observe the manner in which mental health technicians interact with patients of the opposite sex. I am aware of written policies regarding the monitoring of female patients by same sex staff, and I am also familiar with general polices and training that mental health technicians should receive regarding entering the rooms of female patients. . .

Appellees rely on Dr. Dunn's statements in his report that he is "aware of written policies regarding the monitoring of female patients by same sex staff" and is "familiar with general policies and training that mental health technicians should receive regarding entering the rooms of female patients." Appellees urge that "as Medical Director one's job duties focus on institutional policies, protocols, and procedures of facility and its employees" and thus, Dr. Dunn is "absolutely an expert with knowledge, skill, experience, training, of education of general policies at psychiatric hospitals." We disagree.

The applicable standard of care in this case is as to formulating and implementing policies and procedures in a psychiatric hospital. So, the relevant question is whether Dr. Dunn is knowledgeable or experienced about that standard of care. The case of *Reed v. Granbury Hosp. Corp.* provides guidance for our decision. *See Reed*, 117 S.W.3d at 409. In *Reed*, the Fort Worth court of appeals concluded that a trial court did not abuse its discretion in striking the expert testimony because, although the expert physician had expertise in administering the stroke medication, he lacked "any special knowledge about what protocols, policies, or procedures a hospital of ordinary prudence, with the Hospital's capabilities, would have had in place" for administration of the particular stroke medication. *Id.* at 410–12. There was "no evidence in either [the expert's] affidavit or his deposition testimony that he knew what any other hospital's protocols were concerning the administration of t-PA to strike patients." *Id.* at 411.

The rule is clear, "Qualifications cannot be inferred." *Millbrook Healthcare and Rehabilitation Ctr. v. Edwards*, No. 05–14–00202-CV, at *3 (Tex. App.—Dallas Feb. 11, 2015, no pet.) (mem. op.) (citing *Baylor Coll. of Med. v. Pokluda*, 283 S.W.3d 110, 117 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). "When a physician fails to state in his expert report or affidavit that he has knowledge of the standard of care applicable to the specific types of health care providers involved in the claim, or that he has ever worked with or supervised the specific

–10–

types of health care providers involved in the claim, the physician is not qualified on the issue of whether the defendant health care provider departed from the accepted standards of care." *Id.* (citing *Wallace*, 278 S.W.3d at 558).

Dr. Dunn states that he is "aware of written policies regarding the monitoring of female patients by same sex staff" and is "familiar with general policies and training that mental health technicians should receive regarding entering the rooms of female patients." However, Dr. Dunn does not state anywhere that he is familiar with the formulation or implementation of policies and procedures. Therefore, Dr. Dunn has not shown himself qualified to render such an opinion on the standard of care.

In their brief appellees ask this Court to assume that because one is a Medical Director one's job duties "focus on institutional policies, protocols, and procedures . . ." We cannot make such an assumption. *See Tenet Hospitals Ltd. v. Love*, 347 S.W.3d 743, 750 (Tex. App.—El Paso 2011, no pet.) ("[I]t is not enough to summarily state [the expert's] 'knowledge' when the reports and curricula vitae fail to demonstrate how the experts gained the requisite experience or training."). The language presented within the four corners of Dr. Dunn's report and CV does not articulate how Dr. Dunn is qualified to opine on the standard of care applicable to a psychiatric hospital in formulating and implementing policies and procedures.[1]

Accordingly, we conclude the trial court abused its discretion in denying the motion to dismiss on this basis. We agree with Hickory Trail on its first argument.

---

[1] *See Hendrick Medical Ctr.*, 298 S.W.3d at 788–89 (although expert was a board certified internist, an emergency room physician and medical director, an ICU "attending," and director of hospitalists and emergency room physicians, the court of appeals concluded the expert did not demonstrate he had knowledge, training, or experience concerning the applicable standard of care, which in that case was the formulation of hospital policies and procedures in an ICU setting specifically).

## 2. Dr. Dunn's Opinion on Causation

Appellant next contends the trial court abused its discretion by denying its motion to dismiss because "Dr. Dunn's opinion regarding causation is entirely conclusory." Appellant asserts that Dr. Dunn's report "offers no explanation as to how the existence of a policy and procedure, of any sort, would have prevented plaintiff H.H.'s alleged injuries" and thus, "does not pass the 'how and why' test." Appellees respond by arguing that Dr. Dunn is "very clear in his report that in his professional opinion with a reasonable degree of medical certainty that Hickory Trail Hospital's lack of proper training and lack of policies and procedures created an environment that allowed Shawn Mcafee to remain in H.H.'s room for an extended amount of time." Appellees then reassert and rely on a conclusion from Dr. Dunn's report: "Proper supervision of Shawn Mcafee, combined with appropriate training and policies regarding going into the bedrooms or bathrooms of opposite sex patients, would have prevented Shawn Mcafee from having the opportunity to sexually assault [H.H.]." We disagree with appellees' assessment.

Dr. Dunn's report states that appellant Hickory Trail breached the above standard of care by "not having policies for its mental health technicians interacting with patients of the opposite sex" and by "not training its mental health technicians about the need to stay out of the bedrooms of opposite gender patients unless a medical emergency requires that they enter the room." Thus, he concludes, "The lack of such policies and training was the proximate cause of [H.H.'s] injuries and the proximate cause of its employee (Shawn Mcafee) having the opportunity to sexually assault [H.H.]." According to Dr. Dunn, this is because the "lack of proper training and lack of policies and procedures created an environment that allowed Shawn Mcafee to be in [H.H.'s] room for an extended period of time, giving him the opportunity to sexually assault her in the bathroom." "Proper supervision of Shawn Mcafee, combined with appropriate training and

–12–

policies regarding going into the bedrooms or bathrooms of opposite sex patients, would have prevented Shawn Mcafee from having the opportunity to sexually assault [H.H.]."[2]

We first address the absence of policies and procedures. Dr. Dunn's statements assert that Hickory Trail should have implemented policies and procedures and that Hickory Trail breached

---

[2] Dr. Dunn states the following as to the standard of care:

> When a patient is admitted to a psychiatric hospital, the hospital has the responsibility to provide a safe and therapeutic environment to the patient. Because some psychiatric patients may engage in inappropriate sexual behaviors, it is important for the staff to abide by generally accepted polices regarding staff interaction with patients of the opposite gender. A male mental health technician should not go into the room of a female patient unless there is a specific need to go into the room. He should only stay in the room for as long as is absolutely necessary to perform a specific task. He should never close the door to the room unless a female staff member is also present in the room. And there is absolutely no reason that a male staff member should go into a female patient's restroom, unless the patient is having a medical emergency in the restroom. These are general policies that should be in place at all psychiatric units, both for adolescents and adults. These policies protect both the patients and the staff, as they protect the patients from inappropriate sexual behavior by the staff and they protect the staff from unwarranted allegations by the patients. There is never a reason for a male staff member to engage in sexually explicit discussions with a female patient. Under no circumstances is it acceptable for hospital employees to ever engage in any sexual contact with a patient, regardless of age or consent.

Dr. Dunn then addresses the alleged breach of the standard of care:

> Hickory Trail Hospital violated the standard of care by not having policies for its mental health technicians interacting with patients of the opposite sex. Hickory Trail Hospital also violated the standard of care by not training its mental health technicians about the need to stay out of the bedrooms of opposite gender patients unless a medical emergency requires that they enter the room. A "fifteen minute check," if done by a mental health technician of the opposite gender, can be done from the doorway without fully entering the patient's room at all.

> There is a dispute regarding the facts of this case. Shawn Mcafee denies that he ever went into the bathroom with [H.H.] or that he engaged in sexual activity with her. Even if no sexual acts occurred, Hickory Trail Hospital was still in violation of the standard of care by creating an atmosphere in which a male mental health technician would have the opportunity to remain for "too long" in the bedroom of an adolescent female patient.

Finally, Dr. Dunn states the following regarding causation:

> It is my opinion, to a reasonable degree of medical certainty, that Hickory Trail Hospital's lack of proper training and lack of policies and procedures created an environment that allowed Shawn Mcafee to be in [H.H.'s] room for an extended period of time, giving him the opportunity to sexually assault her in the bathroom. Proper supervision of Shawn Mcafee, combined with appropriate training and policies regarding going into the bedrooms or bathrooms of opposite sex patients, would have prevented Shawn Mcafee from having the opportunity to sexually assault [H.H.]. If Shawn Mcafee was indeed fired for staying in the patients' room for too long, then a policy and appropriate training should have been in place to explain to the employees why being in the rooms of opposite sex patients is not allowed. The lack of such policies and training was the proximate cause of [H.H.'s] injuries and the proximate cause of its employee (Shawn Mcafee) having the opportunity to sexually assault [H.H.].

–13–

the standard of care by failing to have these policies and procedures. Dr. Dunn suggests the following policies should have been adopted:

- A male mental health technician should not go into the room of a female patient unless there is a specific need to go into the room.
- He should only stay in the room for as long as is absolutely necessary to perform a specific task.
- He should never close the door to the room unless a female staff member is also present in the room.[3]
- And there is absolutely no reason that a male staff member should go into a female patient's restroom, unless the patient is having a medical emergency in the restroom.

Dr. Dunn fails to explain how and why the absence of these suggested policies caused H.H.'s injuries. *See Hendrick Medical Ctr.*, 298 S.W.3d at 789–90; *Gray*, 189 S.W.3d at 859. The Texas Supreme Court has stated that, "An expert cannot simply opine that the breach caused the injury. Stated so briefly, the report . . . does not give the trial court any reasonable basis for concluding that the lawsuit has merit." *Jelinek*, 328 S.W.3d at 539. An expert must "go further and explain, to a reasonable degree, how and why the breach caused the injury based on the facts presented." *Id*. at 539–40. Dr. Dunn fails to state how the absence of the listed policies would have kept this particular incident from happening. Therefore, Dr. Dunn's opinion is conclusory. *See Id*. (concluding that the expert's report was conclusory on causation when it offered "no more than a bare assertion that Dr. Jelinek's breach resulted in increased pain and suffering and a prolonged hospital stay").

We next address the alleged lack of supervision. Dr. Dunn states that proper supervision of Shawn Mcafee would have prevented the incident. However, he fails to describe that supervision. Without identification of what would constitute proper supervision, this Court

---

[3]Appellees urge in their brief that, "it is abundantly clear that had a female staff member been present with Shawn Mcafee in [H.H.'s] room it would defy reason for any reasonable person to believe that he would have had sexual intercourse with her or received oral sex in front of another female employee." We note, however, that Dr. Dunn did not suggest in his report a policy in which a male mental health technician is *always* accompanied by a female mental health technician when in the room of an opposite-sex patient.

–14–

cannot determine if it is more likely than not that, had there been supervision, the incident would not have occurred. *See Quinones v. Pin*, 298 S.W.3d 806, 815 (Tex. App.—Dallas 2009, no pet.) ("In a medical-malpractice case, the element of causation requires proof that the breach of the standard of care was, more likely than not, the cause of the injury.").

Further, an expert report "must contain sufficiently specific information to demonstrate causation beyond conjecture" and the report "must not be conclusory in its explanation of causation; it must explain the basis of its statements sufficiently to link its conclusions to the facts." *Taylor v. Fossett*, 320 S.W.3d 570, 577 (Tex. App.—Dallas 2010, no pet.). By not identifying how Hickory Trail's failure to supervise Shawn Mcafee caused H.H.'s injuries, the report does not "convincingly tie the alleged departure from the standard of care to specific facts of the case." *See Gray*, 189 S.W.3d 855. When a report fails to outline how a suggested action "would have resulted in different care and treatment, or a different outcome" then there is "a broad analytical gap between the alleged breach and the ultimate harm" and thus, the report is "insufficient to establish causation." *See Love*, 347 S.W.3d at 755; *see also Loya*, 2016 WL 7376559, at *5–6 (expert report explained why the outcome—in that case, why an individual would not have been wrongly, involuntarily committed—would have been different, "had a physician conducted a psychiatric assessment" rather than merely a "licensed professional counselor intern"). Therefore, we conclude Dr. Dunn's opinion that the lack of supervision caused H.H.'s injuries is conclusory.

### III. Conclusion

For the above reasons, we conclude the trial court abused its discretion in denying appellant's second motion to dismiss. Appellant's issue is decided in its favor.

Accordingly, we reverse the trial court's order denying appellant's motion to dismiss, render judgment dismissing appellees' claims against appellant with prejudice, and remand this

case to the trial court to determine any reasonable attorney's fees and costs to be awarded to appellants pursuant to section 74.351(b)(1) of the civil practice and remedies code.


/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

160663F.P05